UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DAVID M. SOUBLET                        CIVIL ACTION

VERSUS                                  NO: 09-6374

LOUISIANA TAX COMMISSION                SECTION R

**ORDER AND REASONS**

In this employment discrimination action, the Louisiana Department of Revenue, on behalf of the Louisiana Tax Commission, moves for summary judgment on plaintiff's discriminatory failure to promote claim.[1]  Plaintiff David Soublet filed a cross-motion for summary judgment on his discriminatory failure to promote claim as well as his retaliation claim.[2]  Because the Court finds material fact issues exist regarding whether defendant's nondiscriminatory justification for not promoting Soublet is a pretext for discrimination, the Court DENIES both defendant's and plaintiff's motions on the discriminatory failure to promote claim.  Because the Court finds that material fact issues exist regarding the causation element of plaintiff's *prima facie* case of retaliation, the Court DENIES plaintiff's motion on his retaliation claim.

---

[1]  R. Doc. 18.

[2]  R. Doc. 20.

## I. Background

David Soublet, an African-American male, was hired by the Louisiana Tax Commission (LTC) in 2003 as a Tax Specialist II.[3] In June 2007, Soublet applied for the position of Tax Supervisor.[4]  Three other LTC employees, Charles Dickey, Patrick Matheu and Albert Thom, also applied for the position.[5]  The position required a written test,[6] as well as the following "minimum qualifications":

> A baccalaureate degree plus four years of professional level experience in accounting, auditing, financial analysis or formal property appraisal....  Graduate training in accounting, business administrations, economics, or finance may be substituted for one year of the required experience on the basis of thirty semester hours for one year of experience.[7]

 On the written test, Dickey, the applicant ultimately selected, scored the highest.[8]  Soublet received the second highest score.[9]  Civil Service sent a "Certificate of Eligibles"

---

[3]  R. Doc. 22-4, Ex. A.4 at 1 (Soublet Aff. I).

[4]  R. Doc. 18-16, Ex. M at 1 (Soublet Application).

[5]  R. Doc. 18-14, Ex. K at 2 (Civil Service Hearing Decision).

[6]  R. Doc. 18-10, Ex. G (Job Vacancy Posting).

[7]  R. Doc. 20-18, Ex. I (Tax Commission Supervisor Description).

[8]  R. Doc. 18-11, Ex. H (Certificate of Eligibles).

[9]  *Id.*

2

with the test scores for the four applicants to the Tax
Commission.[10]

All four applicants were interviewed by a panel consisting
of Jon Allen, Assistant Director of Tax Commission, and Jeff
Crosby, Director of Tax Commission.[11]  As part of the interview,
each candidate was asked a list of standard questions.[12]  After
the interviews were completed, Dickey was selected and "detailed
to special duty" to the position of Tax Commission Supervisor.[13]

After being informed that he was not selected for the
position, Soublet appealed the decision to the Louisiana
Department of State Civil Service alleging discriminatory non-
promotion based on race.[14]  The Civil Service Commission referee
held a three-day hearing and found that while Dickey met the
minimum qualifications for the position, the minimum
qualification requirements did not apply for a "detail to special
duty" promotion.[15]  In addition, the Civil Service Commission
referee found that the LTC articulated legitimate, non-

---

[10]  *Id.;*  R. Doc. 26-2 at 12 (Lavinghouse Dep.).

[11]  R. Doc. 18-13, Ex. J at 2 (Crosby Dep.); R. Doc. 22-5,
Ex. A-5 at 23 (Allen Dep.).

[12]  R. Doc. 20-7; R. Doc 20-8.

[13]  R. Doc. 18-14, Ex. K at 3 (Civil Service Hearing
Decision).

[14]  *Id.* at 2-3.

[15]  *Id.* at 4, 10.

discriminatory reasons for the selection of Dickey and that Soublet failed to substantiate his claim of discrimination.[16]

After he filed an EEOC intake questionnaire and appealed the promotion decision to the Civil Service Commission, Soublet asserts that the defendant retaliated against him. Specifically, Soublet asserts that the defendant reassigned him to another supervisor, criticized his work, threatened disciplinary action, sent warning letters, required him to produce documentation for a sick day, lowered his performance evaluations, denied him merit raises and suspended him without pay for two days.[17] Soublet filed this action on September 18, 2009.[18]

## II.  Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as

---

[16]  *Id.* at 9.

[17]  R. Doc. 22-4, Ex. A-4 at 3, 6 (Soublet Aff. I); R. Doc. 20-13, Ex. D (Chronology of Retaliation).

[18]  R. Doc. 1.

4

to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

5

of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts
showing that a genuine issue exists.  *See id.* at 324.  The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial.  *See,
e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel.
Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir.
1988), *cert. denied*, 488 U.S. 926 (1988).


**III. Analysis**

    ***A) Discriminatory Failure to Promote***

    Title VII of the 1964 Civil Rights Act provides that it
shall be an unlawful employment practice for an employer:

> (1) to fail or refuse to hire or to discharge any
> individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such
> individual's race, color, religion, sex, or national origin;
> or
>
> (2) to limit, segregate, or classify his employees or
> applicants for employment in any way which would deprive or
> tend to deprive any individual of employment opportunities
> or otherwise adversely affect his status as an employee,
> because of such individual's race, color, religion, sex, or
> national origin.

42 U.S.C. § 2000e-2(a).  The plaintiff in a Title VII action
bears the initial burden of establishing a *prima facie* case of
race discrimination.  *McDonnell-Douglas Corp. v. Green*, 311 U.S.

792, 802 (1973).  This means that the plaintiff must show that
(1) he is a member of the protected class, (2) he was qualified
for the position, (3) he was rejected for the position, and (4)
that the employer hired an applicant with the plaintiff's
qualifications.  *Id.*  The burden then shifts to the defendant to
rebut the presumption of discrimination by articulating a
legitimate, nondiscriminatory reason for the challenged
employment action.  *Id.*  The plaintiff then has the "opportunity
to prove by a preponderance of the evidence that the legitimate
reasons offered by the defendant were not its true reasons, but
were a pretext for discrimination."  *Tex. Dep't of Cmty. Aff. v.
Burdine*, 450 U.S. 248, 253 (1981); *Okoye v. Univ. of Tex. Hous.*,
245 F.3d 507, 512 (5th Cir. 2001).

    The plaintiff always has the ultimate burden of persuading
the trier of fact that the defendant intentionally discriminated
against him.  *Burdine*, 450 U.S. at 253.  In assessing whether the
plaintiff has carried his ultimate burden, a court may consider
"the strength of the plaintiff's prima facie case, the probative
value of the proof that the employer's explanation is false, and
any other evidence that supports the employer's case."  *Reeves v.
Sanderson Plumbing Pros., Inc.*, 530 U.S. 133, 148-49 (2000).

### 1.  Soublet's Prima Facie Case

The Court finds, and the defendant does not dispute, that Soublet sets forth a *prima facie* case of discrimination.  First, Soublet is African-American and thus a member of a protected group.  Second, the parties agree that Soublet has provided sufficient evidence that he was qualified for the Tax Supervisor position.  Third, Soublet was not selected for the promotion.  Fourth, Dickey, a white male also employed by the LTC as a Tax Supervisor II, was selected for the position sought by Soublet.  Thus, Soublet has established a *prima facie* case for discrimination based on his race.

### 2.  The Defendant's Nondiscriminatory Justification

Because the plaintiff has set forth a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for plaintiff's non-promotion.  *McDonnell-Douglas Corp.* 311 U.S. at 802.  Defendant's burden is one of production, not persuasion; it "can involve no credibility assessment."  *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  Evidence that the employer found that the selectee had a qualification that the plaintiff lacked can suffice as a legitimate, nondiscriminatory reason for a failure to promote.  For example, in *Jefferies v. Harris County Community Action Ass'n*, the

employer asserted that the selected applicant was promoted because that applicant had supervisory experience, and the plaintiff did not.  693 F.2d 589, 590 (5th Cir. 1982).  The Fifth Circuit held that "the promotion of a better qualified applicant is a legitimate and nondiscrimnatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory."  *Id.* at 590-91 (citing *Burdine*, 450 U.S. at 253); *see also Price v. Fed. Ex. Corp.*, 283 F.3d 715, 720-721 (5th Cir. 2002) (finding employer asserted legitimate, nondiscriminatory reason that it promoted applicant based on his superior qualifications and submitted competent evidence of selected applicant's management experience, military training, and connection to the geographic area).

Here, the defendant asserts that "based on the total qualifications for the job," Soublet was not hired because Dickey was "better-suited" for the position.[19]  Allen testified that the hiring panel sought someone with "appraisal knowledge, appraisal aptitude, [and] communication skills."[20]  Crosby similarly testified that the Tax Supervisor position required a candidate with strong communication skills and a thorough understanding of the appraisal process.[21]  Based on a number of factors, including

---

[19]  R. Doc. 22-3, Ex. A.2 (Letter to Soublet).

[20]  R. Doc. 18-12, Ex. I at 5 (Allen Dep.).

[21]  R. Doc. 18-13, Ex. J at 2-3 (Crosby Dep.).

past work performance at the LTC, the interview, the candidates ability to communicate, the candidates attention to detail and the candidates understanding of the appraisal process, the interview panel determined that Dickey was the best candidate.[22] The defendant specifically points to Dickey's superior performance ratings as evidence of Dickey's stronger credentials. Crosby also testified that he and Allen did not feel that Soublet had a sufficient understanding of the appraisal process to supervise and train other employees in the appraisal process.[23] Crosby testified that Soublet had complained that he had not been properly trained, and that Soublet's complaint, after having conducted appraisals for many years, reflected poorly on his competence as an appraiser.[24]  Accordingly, the defendant has met its burden of producing evidence of a legitimate, nondiscriminatory reason for plaintiff's non-selection.


   3.  *Soublet's Allegation of Pretext*

   Because the defendant has set forth a legitimate, non-discriminatory reason for plaintiff's non-selection, the burden shifts to the plaintiff to prove that the defendant's asserted

---

   [22]  R. Doc. 18-14, Ex. K at 5 (Civil Service Hearing Decision).

   [23]  R. Doc. 18-13, Ex. J at 3 (Crosby Dep.).

   [24]  R. Doc. 24-5, Ex. 5 at 1 (Crosby Dep.).

reasons were actually a pretext for discrimination. *Burdine*, 450 U.S. at 253.  On summary judgment, plaintiff must point to a genuine issue of fact that defendant's asserted rationale is pretextual.

Initially, the Court addresses the defendant's argument that it is entitled to the "same actor inference" because Crosby was involved in both hiring and not promoting Soublet.  Under the same actor inference, there is "a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009); *see also Ako-Doffou v. Univ. of Tex.*, 71 F. App'x 440, 2003 WL 21417478, at *2 (5th Cir. 2003) ("An inference against a finding of pretext is present where the same actor is responsible for the decision to both hire and fire the complaining employee.").  The Court does not apply the same actor inference here for a number of reasons.  First, the Court recognizes that good reasons exist for declining to apply or declining to give the same weight to the same actor inference in the failure to promote context as in the traditional termination context.  In *Zambetti v. Cuyahoga Community College*, the plaintiff argued that the same actor inference should not apply in the failure to promote context because it was reasonable to believe that an employer might hire a disfavored race for an

entry level position, but refuse to promote the employee above a certain level.  314 F.3d 249, 261-62 (6th Cir. 2002).  The United States Court of Appeals for the Sixth Circuit recognized that the plaintiff's argument "might have some merit," but refused to decide the issue.  *Id.* at 262; *see also Taylor v. Va. Union Univ.*, 193 F.3d 219, 246-47 (4th Cir. 1999) (Murnaghan, J., dissenting), *abrogated on other grounds* (stating that the same actor inference is not equally powerful when applied to a decision not to promote an employee because the "thought of an employer hiring an individual in a protected class and, [then] for discriminatory reasons, ... hindering the employee from advancing to the ranks of management or into a higher paying position ... does not require a stretch of the imagination").  Second, the Court notes that the Fifth Circuit has yet to apply the same actor inference in resolving a discriminatory failure to promote case.[25]

Third, the Court finds that the same actor inference is not applicable in resolving this summary judgment motion because an issue of fact exists as to whether Crosby was responsible for both Soublet's hiring and non-promotion.  "[T]he inference is not

---

[25]  Assuming the same actor inference should apply in the failure to promote context, even when applicable, "the same actor inference does not rule out the possibility that an individual could prove a case of discrimination."  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 n.16 (5th Cir 2000); *see also Spears*, 337 F. App'x at 422 ("[T]he presumption created by the same actor inference is not irrebuttable.").

automatic" when it is not uncontested that the same person hired and took adverse action against the employee. *Russell*, 235 F.3d at 229 n.16 (stating that it was up to the jury to consider the evidence before it regarding application of the same actor inference, where defendant asserted that the same person hired and fired the plaintiff, while plaintiff presented evidence that she did a courtesy interview with, but was not hired by, the individual who fired her). In *Russell v. Mountain Park Health Center Properties, LLC*, the United States Court of Appeals for the Ninth Circuit held that the defendant was not entitled to the same actor inference for purposes of summary judgment when there was a genuine issue of fact as to whether the individuals responsible for plaintiff's termination were actually responsible for his hiring, rather than simply participants in the hiring process. No. 08-16798, 2010 WL 4463138, at *1 (9th Cir. Nov. 8, 2010). Here, Soublet testified that Raymond Foster interviewed and hired him, and that Crosby merely sat in on the interview and took notes.[26] Soublet's testimony creates a genuine issue as to whether Crosby was actually responsible for Soublet's hiring. Thus, for purposes of summary judgment, the defendant is not entitled to the same actor inference of non-discrimination.

Soublet has two methods available to him to prove that the defendant's proffered reasons for failing to promote him were a

---

[26]   R. Doc. 24-7 at 1 (Soublet Aff. II).

13

pretext for racial discrimination: (1) by showing that he is
"clearly better qualified" than the person selected for the
position; or (2) by showing that the defendant's proffered
explanation is false or "unworthy of credence."  *Burrell v. Dr.
Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir.
2007); *see also id.* at 412 n.11 ("[A] showing that a plaintiff is
'clearly better qualified' is one way of demonstrating ...
pretext," but "[p]retext may be shown by any evidence which
demonstrate's the employer's proffered reason is false.").

        *(a) Clearly Better Qualified*

     When a plaintiff seeks to rebut a defendant's legitimate
non-discriminatory justification by providing evidence that he
was clearly better qualified than the employee selected for the
position, he or she faces a high bar:

> [T]he bar is set high for this kind of evidence because
> differences in qualifications are generally not probative
> evidence of discrimination unless those disparities are
> of such weight and significance that no reasonable person, in
> the exercise of impartial judgment, could have chosen the
> candidate selected over the plaintiff for the job in
> question.

*Warren v. City of Tupelo*, 332 F. App'x 176, 182 (5th Cir. 2009).
(internal quotation marks omitted).  Courts are not well-suited
to evaluate the qualifications for high-level promotions in other
disciplines.  *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438,
1445 (5th Cir. 1995) (finding evidence insufficient to establish

that employee was "clearly better qualified" than selected applicants, and noting the court's reluctance, in the absence of vast disparities in qualifications, to substitute its evaluation of qualifications for those of individuals trained and working in the relevant field).  Thus, the employer's decision need only be "somewhere within the realm of reason." *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 282 (5th Cir. 1999) (rejecting argument that a jury instruction regarding disparity in qualifications impermissibly elevated the burden of persuasion in proving pretext because an employer's judgment as to qualifications is not probative of discriminatory motive unless no reasonable employer would have made the same decision).

In this case, plaintiff puts much emphasis on Dickey's alleged failure to meet the minimum job requirement of four years of professional level experience in accounting, auditing, financial analysis or formal property appraisals.  Initially, the Court notes that the Civil Service Commission referee found that Dickey met the minimum qualifications for the position, as did Civil Service in listing Dickey on the "Certificate of Eligibles," and a human resource analyst with the LTC in confirming Dickey's selection for the position.[27]  In calculating Dickey's total professional experience, the Civil Service

---

[27]   R. Doc. 18-14, Ex. K at 5 (Civil Service Hearing Decision); R. Doc. 26-2 at 12-13, 16-17 (Lavinghouse Dep.).

Commission referee included Dickey's employment with Juneau Appraisal Services, Inc. from May 2003 to July 2004.[28]   Soublet has provided evidence, however, that from May 2003-September 2003, Dickey's work experience was limited to assisting an appraiser in gathering information on properties, and that it was not until September 2003 when his role was expanded to include the preparation of appraisal reports.[29]   Thus, Soublet asserts that Dickey's appraisal experience with Juneau does not qualify as "professional" experience.   Although Soublet may have raised an issue as to whether Dickey met the posted minimum qualifications for the position, the Fifth Circuit has consistently held that "better education, work experience and longer tenure with the company do not establish that an applicant is clearly better qualified, meaning that an employer has a right to depart from published job requirements and to value certain attributes over others." *Thomas v. Trico Prods. Corp.*, 256 F. App'x 658, 662 (5th Cir. 2007) (holding employee failed to rebut defendant's legitimate, nondiscriminatory explanation that the selected applicant was better qualified despite plaintiff's argument that the selected applicant's work experience and education failed to meet the minimum requirements listed in the

---

[28]   R. Doc. 18-14, Ex. K at 5 (Civil Service Hearing Decision)

[29]   R. Doc. 20-22, Ex. M (Letter from Mitchell Kapoulas).

employer's job advertisement); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 722-24 (5th Cir. 2002) (finding that even though the selected candidate did not technically meet the job requirements, his qualifications could be considered to have reasonably satisfied the requirements); *Bauman v. United Healthcare Servs., Inc.*, No. 08-2882, 2009 WL 5178022, at *4 (S.D. Tex. Dec. 30, 2009) ("That Defendant hired persons who did not meet all of the listed requirements in its job postings does not create a material fact issue of pretext."). Thus, Dickey's alleged failure to meet the minimum job requirements is not, in itself, dispositive.

Even if the Court were to assume that Dickey lacked four years of "professional" experience, Dickey still possessed significant experience and strong credentials in the relevant field. First, Dickey had worked for the LTC for three years before receiving the promotion at issue. In comparison, however, Soublet had worked for the LTC for about 4.5 years at the time of the promotion. Second, Dickey received the highest score on the required written test, with Soublet receiving the second highest score.[30] Third, Dickey received superior annual performance review scores to Soublet as an appraiser, a factor highly relevant given that the promotion at issue was to a position

---

[30] R. Doc. 18-11, Ex. H (Certificate of Eligibles).

17

supervising appraisal work.[31]  Fourth, in selecting Dickey as the
best candidate for the position, both Crosby and Allen point to
the importance of communication skills for a supervisory role.[32]
Dickey consistently received equal or better performance ratings
than Soublet on the factor of communication.[33]  In addition, the
Court notes that Soublet was ranked as only the third best
applicant for the Tax Supervisor position.[34]  The Court
acknowledges that Soublet had more formal education than Dickey,
specifically an MBA with a focus in accounting, but finds this
experience not particularly relevant to the position at issue.[35]
Further, although Soublet had more education and longer tenure
with the LTC, "better education, work experience and longer
tenure with the company do not establish that an applicant is
clearly better qualified." *Thomas*, 256 F. App'x at 662.  In
light of Dickey's superior test score, performance ratings and
communication skills, the Court finds that the evidence does not

---

[31]   R. Doc. 18-6, Ex. C; R. Doc. 18-7, Ex. D; R. Doc. 18-8,
Ex. E; R. Doc. 18-9, Ex. F; R. Doc. 20-21, Ex. L (Soublet
Evaluations); R. Doc. 20-10, Ex. A.23 (Dickey Evaluations).

[32]   R. Doc. 18-12, Ex. I at 5 (Allen Dep.); R. Doc. 18-13,
Ex. J at 2-3 (Crosby Dep.)

[33]   *See* R. Doc. 20-10, Ex. A.23 (Dickey Evaluations)
(showing Dickey consistently received 4 out of 5 in the area of
communication).

[34]   R. Doc. 18-14, Ex. K at 5 (Civil Service Hearing
Decision).

[35]   *See id.* at 8.

18

show that no reasonable person, in the exercise of impartial
judgment, could have chosen Dickey over Soublet for the Tax
Supervisor position.

> (b) Defendant's Explanation is False or "Unworthy of
> Credence"

Having failed to establish that he was "clearly better
qualified" for the Tax Supervisor position, Soublet can still
prove that the defendant's reason for failing to promote him was
a pretext for discrimination by showing that the defendant's
proffered explanation is false or unworthy of credence. *Burrell*,
482 F.3d at 412.  An employer's explanation is false or unworthy
of credence if it is not the real reason for the employment
action. *Id*.

The Court finds that a genuine issue of material fact exists
as to whether defendant's proffered reasons of Dickey's better
qualifications and suitability for the position and Soublet's
performance deficiencies were a pretext for discrimination.
First, Soublet presents evidence that despite testimony that
Crosby and Allen had concerns regarding Soublet's understanding
of the process for conducting ratio studies and his understanding
of the general appraisal process, these concerns had never been
expressed in any of Soublet's annual performance reports.
Specifically, in 2006, the year that the ratio study was

conducted, in rating Soublet's performance, Allen recorded that Soublet's work product was "thorough and completed on time" and that he "used good judgment" in daily decision-making and problem-solving.[36]  Second, although Crosby testified that Soublet complained that he had not been properly trained as an appraiser,[37] Soublet contradicted this assertion testifying that he never stated that he had not been properly trained.[38]  Third, Soublet has submitted evidence that Richard Young, an African American member of the Louisiana Board of Tax Commissioners and an experienced real estate appraiser, specifically asked to participate in the interview panel for the selection of the Tax Supervisor's position.[39]  Young participated in the interview panels for both the Director's position for which Crosby was selected and the Assistant Director's position for which Allen was selected.[40]  Young states that despite his asking to participate in the interview panel, he was excluded from participating because Crosby did not inform him of the dates and times of the panel interviews.[41]  Additionally, Young testified

-----

[36]  R. Doc. 18-9, Ex. F at 1-4 (Soublet Evaluation).

[37]  R. Doc. 24-5, Ex. 5 at 1 (Crosby Dep.).

[38]  R. Doc. 24-7 at 3 (Soublet Aff. II).

[39]  R. Doc. 24-6, Ex. Z at 1 (Young Aff.).

[40]  *Id.* at 1-2.

[41]  *Id.* at 2.

that Soublet was a more experienced professional tax appraiser than Dickey.[42]  Based on Young's observations of Soublet, Young states that he would have recommended Soublet for the promotion.[43]  Crosby's exclusion of Young from the interview panel arguably suggests that he wanted to eliminate an African-American who would vote for Soublet or challenge the selection of Dickey over Soublet.

Based on the evidence submitted by the parties, the Court finds that a genuine issue of material fact exists as to whether defendant's proffered reasons for not promoting Soublet were a pretext for discrimination.  Accordingly, the Court denies both the plaintiff's and the defendant's motions for summary judgment on the discriminatory failure to promote claim.

### B) Retaliation

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  Under the traditional *McDonnell Douglas* burden shifting framework, the plaintiff must first establish a *prima facie* case of retaliation.  This requires putting forth evidence that: (1) the plaintiff engaged in an activity protected

---

[42]  *Id.*

[43]  *Id.*

by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff makes a *prima facie* showing, the burden shifts to the employer to provide legitimate, non-retaliatory reason for the adverse employment action.  *Id.*  Finally, if the employer meets this burden of production, the burden shifts to the plaintiff to prove that the employer's legitimate reason is a pretext for the actual retaliatory reason.  *Id.*

      Before addressing the merits of Soublet's retaliation claim, the Court rejects defendant's assertion that Soublet did not raise a retaliation claim in his complaint.  Plaintiff's complaint states that plaintiff brought his action under Title VII "for prohibited employment practices based on race, African American *and retaliation for protest of protected activities*."[44] Further, in asserting his claims, plaintiff alleges "that he has been discriminated against by the Defendant in not being promoted because of his race, African American *and in reprisal for his protest of protected activities* in violation of Title VII."[45] Thus, the Court finds that Soublet asserted a retaliation claim in his complaint and is not raising the claim for the first time

_____

      [44]   R. Doc. 1 at 1 (emphasis added).

      [45]   *Id.* at 2 (emphasis added).

in his motion for summary judgment.  Accordingly, the Court will address the merits of plaintiff's retaliation claim.

### 1.  *Protected Activities*

An employee engages in activity protected by Title VII if he opposes any employment practice made unlawful by Title VII, or if he participates in any manner in a proceeding under Title VII. 42 U.S.C. § 2000e-3.  Here, Soublet engaged in protected activity by appealing the promotion decision to the Civil Service Commission and by filing an intake questionnaire with the EEOC, in both cases alleging that he was not selected for the Tax Supervisor position because of his race.[46]  Thus, plaintiff has established the first element of his *prima facie* case of retaliation.

### 2.  *Materially Adverse Employment Action*

Soublet must demonstrate that the LTC took an "adverse employment action" against him.  *Aryain*, 534 F.3d at 484.  In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged employment action "materially adverse."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  An employment action is materially

---

[46]   R. Doc. 18-14, Ex. K at 2 (Civil Service Hearing Decision); R. Doc. 24-4, Ex. 3 (EEOC Intake Questionnaire).

23

adverse if "it well might have dissuaded a reasonable worker from
making or supporting a charge of discrimination." *Id.* (citations
and internal quotation marks omitted).  An employment action is
not materially adverse if it amounts only to "petty slights or
minor annoyances that often take place at work and that all
employees experience." *Id.*

Soublet asserts that the defendant engaged in a number of
retaliatory acts including: (1) questioning his time sheets; (2)
threatening disciplinary action against him; (3) criticizing his
work; (4) issuing warning letters; (5) requiring documentation
for one day sick leave; (6) reassigning him to another
supervisor; (7) lowering his annual evaluation ratings and thus
denying him merit raises; and (8) suspending him for two days
without pay.

The Court finds that the first six alleged retaliatory acts
do not rise to the level of materially adverse employment
actions.  In *Earle v. Aramark Corp.*, the Fifth Circuit held that
disciplinary write-ups and alleged retaliatory micro-managing of
plaintiff's performance did not constitute materially adverse
employment actions.  247 F. App'x 519, 524 (5th Cir. 2007); *see
also Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 404, 407 (5th
Cir. 2007) (plaintiff's allegation that he was watched more
closely than other employees was not the sort of action that
would dissuade a reasonable employee from reporting

24

discrimination); *Derhart v. Baker Hughes Oilfield Operations*, 214
F. App'x 437, 442 (5th Cir. 2007) (alleged retaliatory written
warnings would not have dissuaded a reasonable worker from making
or supporting a charge of discrimination); *Muse v. Jazz Casino
Co.*, No. 09-0066, 2010 WL 2545278, at *3 (E.D. La. June 16, 2010)
(supervisor's close scrutiny of employee's work was not
materially adverse employment action for retaliation claim); *Bui
v. Horseshoe Entertainment*, No. 07-1712, 2009 WL 587084, at *12
(W.D. La. March 5, 2009) (plaintiff's assertions that her
supervisors "created a paper trail of written warnings to get rid
of her" and repeatedly subjected her to negative treatment at
work were not adverse employment actions in the retaliation
context).   Similarly, in this case, Soublet refers to defendant's
acts as a "campaign of 'managing' and documenting [his] every
move."[47]   The Court finds that plaintiff's complaints of increased
or altered supervision, criticism and documentation, even when
considered together, would not dissuade a reasonable worker from
making or supporting a charge of discrimination.

On the other hand, the Court finds Soublet's two-day
suspension and denial of a merit pay increase do constitute
materially adverse employment actions.   In *Bouvier v. Northrup
Grumman Ship Systems, Inc.*, the Fifth Circuit held that an
employee's two-day suspension constituted an adverse employment

---

[47]   R. Doc. 20-1 at 6.

action to support a gender discrimination claim.  350 F. App'x
917, (5th Cir. 2009); *see also Burlington N. & Santa Fe Ry. Co.*,
548 U.S. at 72-73 (thirty-seven day suspension without pay
constituted a materially adverse employment action, even though
the employee later received back pay).  In *Porter v. Shah*, the
United States Court of Appeals for the District of Columbia
recently held that an interim assessment that did not affect an
employee's position, grade level, salary or promotion
opportunities was not materially adverse, but that a negative
assessment that could expose the employee to removal or reduction
in grade was materially adverse.  606 F.3d 809, 818 (D.C. Cir.
2010); *see also Chelette v. State Farm Mut. Auto. Ins.*, No. 04-
2440, 2006 WL 2513918, at *13 (W.D. La. Aug. 29, 2006) (negative
performance evaluation and resulting lower salary increase were
materially adverse in retaliation context).  Here, the Court
finds that Soublet's two-day suspension without pay and decreased
performance evaluations resulting in the denial of a merit
increase would dissuade a reasonable worker from supporting a
charge of discrimination and thus constitute materially adverse
employment actions.


   *3. Causation*

   Soublet must also demonstrate a causal connection between
his protected activities and the adverse employment actions.  In

26

some cases, causation may be inferred from a close temporal proximity between a protected activity and an adverse employment action. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). But, "cases that accept mere temporal proximity ... as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

The Court finds that genuine issues of material fact exist as to whether plaintiff can establish *prima facie* causation. In this case, more than ten months passed between when the Civil Service Commission rendered its decision on October 20, 2008 and when the first materially adverse employment action occurred, the denial of a merit increase on August 24, 2009. Under Fifth Circuit law, plaintiff cannot rely solely on temporal proximity to establish his *prima facie* case. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (finding five-month period between protected activity and adverse employment action did not establish *prima facie* retaliation claim). Although plaintiff has also submitted evidence that before the civil service hearing he received annual merit increases and was not subjected to discipline,[48] the evidence in the record demonstrates

---

[48]   The Court notes that while Soublet testifies in his affidavit and by reference in his Chronology of Retaliation to his suspension and denial of a merit increase, plaintiff has

a tense working relationship between Dickey and Soublet soon after Dickey's promotion.  This is apparent from a chain of emails Soublet has submitted.[49]  In numerous emails, Dickey clearly takes issue with Soublet's work performance.  Soublet's responses are sarcastic in tone, often challenging Dickey's practices, critiques and integrity.  The emails could suggest Soublet's reluctance to take direction from Dickey.  The Court notes that Dickey and Soublet's relationship was so dysfunctional that Dickey proposed that he not supervise Soublet temporarily. Taken as a whole, the evidence submitted leaves material fact questions as to whether the adverse employment actions taken against Soublet resulted from retaliation or his own insubordination.  Thus, the Court finds a genuine issue as to whether plaintiff can demonstrate a causal connection between the materially adverse employment actions and his protected activities.  Accordingly, the Court denies plaintiff's motion for summary judgment on his retaliation claim.

---

failed to submit the corresponding performance evaluations or other documentary evidence for these adverse employment actions. The absence of these documents is suspect given that Soublet provided the Court with all other performance evaluations since he was hired by the LTC in 2003.

[49]  R. Doc. 20-27, Ex. V.

## IV. Conclusion

For the foregoing reasons, the Court DENIES plaintiff's and defendant's cross-motions for summary judgment on plaintiff's discriminatory non-promotion claim, and DENIES plaintiff's motion for summary judgment on his retaliation claim.


New Orleans, Louisiana, this ___3rd___ day of February, 2011.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

29